## Baker *v.* Detrich et al., Appellants.

*Eminent domain—Taking land for lateral railroad—Damages— Agricultural purposes—Underlying minerals—Evidence.*

1. In a proceeding to determine damages due to an owner of a farm over which a lateral railroad is being constructed, where it appears that 14 acres of the 150 acres constituting the farm are underlaid with a peculiar and valuable kind of limestone, and that this portion is cut off by a creek from the rest of the farm, and that the railroad is being constructed beside the base of a cliff along

the creek in such a way as to interfere with the quarrying of the limestone, the measure of damages is the market value of the land before and after the taking, and not the value of the farm as a farm useful for agricultural purposes only.

2. In such a case it is proper to permit the owner to show that the farm had a special value as a source of supply of limestone useful for fluxing purposes in the manufacture of steel, distinct and apart from its value for agriculture; that the farm was ripe and ready for development for that special purpose; to be followed by evidence of witnesses familiar with the value of such limestone lands, showing the market value for such land.

*Appeals—Evidence—Rejection—Wrong reason for rejection— Harmless error.*

3. Where an offer of evidence is objected to by counsel for a wrong reason, and the court rejects the offer for another and also a wrong reason, the error of the court in rejecting the offer, for the reason stated by himself, would be unimportant and harmless error only if the objection made by counsel had been well taken. The evidence having been rejected, the error is complete.

Argued May 10, 1920. Appeal, No. 136, Jan. T., 1920, by defendants, from judgment of C. P. Franklin Co., Feb. T., 1918, No. 58, on verdict for defendants in case of John E. Baker v. William H. Detrich et al. Before BROWN, C. J., STEWART, MOSCHZISKER, FRAZER, WALLING, SIMPSON and KEPHART, JJ. Reversed.

Appeal from report of jury of view. Before GILLAN, P. J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for defendants for $1,758.33. Defendants appealed.

*Error assigned,* among others, was (10) the rejection of the offer of evidence quoted in the opinion of the Supreme Court, quoting the record.

*Charles Walter,* of *Walter & Gillan,* and *O. C. Bowers,* with them *William S. Hoerner,* for appellants.—The court below was wrong on the authority of the following

cases: R. R. Co. v. Balthaser, 119 Pa. 472; Kossler
v. R. R., 33 Pa. 64; Gearhart v. Water Co., 202 Pa. 292.

*Walter K. Sharpe,* with him *John W. Hoke,* for appellee.—The true measure of damages is the difference in the market value of the whole property immediately before and after the construction of the road as affected thereby: Frick Coke Co. v. Painter, 198 Pa. 468; Brown v. Corey, 43 Pa. 495; Searle v. R. R., 33 Pa. 57; Savings & Trust Co. v. Penna. R. R. Co., 229 Pa. 484.

OPINION BY MR. JUSTICE STEWART, June 26, 1920:

This is a proceeding for the assessment of damages sustained by landowners in the taking and appropriation of their land in the construction of a lateral railroad. The plaintiff is the owner and operator of certain stone quarries near the village of Williamson in the County of Franklin. He petitioned the court for allowance to construct and operate a lateral railroad over a defined route not exceeding three miles in length and extending from a certain limestone quarry owned and operated by him to a designated point on the railroad extending from the village of Richmond in said county and connecting with the Cumberland Valley Railroad, now owned and operated by the Pennsylvania Railroad. In his petition he asked for the appointment of viewers "to view the said route and premises, examine the same and report whether the proposed lateral road is necessary for private or public purposes, as well as to assess the damages which will be sustained by the owners of intervening land." Viewers were appointed and in due time they reported that the proposed road was necessary and would be useful for private purposes. This feature of the case does not concern us in the present inquiry, since on appeal from the report of viewers the jury sustained the finding of the viewers as to the necessity of the road, and there is no complaint as to this. The defendants are the owners of one of the intervening

farms or tracts of land through and over which the proposed road passes for a distance of six hundred feet, occupying a uniform width of twenty feet. Being dissatisfied with the amount of damages awarded them, they appealed from the award of the viewers, and it is from the judgment entered on the verdict in the common pleas that we have this appeal.

Because of the immediate issue before us it is important to understand more fully the situation and character of the appellants' land, the extent of the railroad's appropriation, and the manner in which it bisects the property. The tract is a farm containing about one hundred and fifty acres and has always been used for purposes of husbandry. It lies immediately south of, and is contiguous to, a larger tract owned by the appellee, John E. Baker, on which he maintains his quarry. A stream known as Back creek flows through the northern section of the farm, cutting off some fourteen acres, lying to the west of the creek, from the main body of the land. The portion of the farm so cut off, because of its rocky formation, is not tillable land; the rest of the land is tillable and in good state of cultivation. The line of the proposed railroad passes along this section of the farm so cut off; on the farther side of the creek the ground rises abruptly in a cliff of varying height, exposing to view deposits of limestone. It was the contention of defendants that,—while this small tract of fourteen acres so separated from the main body is dissimilar to the rest of the farm in its general character, and therefore is not so well, if at all, adapted to agricultural uses,—it contains within itself an element which enhances its value in the general market above and beyond what it would have were it simply agricultural land of equal fertility with the rest of the farm. It admittedly abounds in a limestone rock which carries a low per centum of silica, the same quality of rock that is used largely in the manufacture of steel as a fluxing purifier in the furnaces in western Pennsylvania and

elsewhere, where it is in great demand. Defendants called to the stand George E. Howard, a witness who testified that he was engaged in operating limestone quarries for commercial purposes near the City of Harrisburg, that he produced, bought and sold limestone for the purposes above indicated. The following offer was then made by the defendants: "We now propose to show by this witness that the Detrich farm has a special value as a source of supply of low silica limestone suitable for fluxing purposes distinct and apart from its value for agriculture or other purposes, and that the farm is ripe and ready for development for that special purpose; this to be followed by the evidence of this and other witnesses who are familiar with the demands for land containing limestone deposits having a low content of silica, showing the market value in the open public market for such land." The offer was objected to as introducing a measure of damages which is not the true measure of damages in the case. The ruling of the court was, "The witness has not qualified himself to speak as to the value of this property, therefore the objection is sustained." This action of the court in rejecting the offer was excepted to and is the subject of the tenth assignment of error.

A manifest distinction will be observed between the reasons assigned by the court for the rejection of the offer and the objection urged by counsel. Certainly it was not meant by the offer to show by the witness on the stand the market value of this particular tract of land. Obviously, we think, all that was intended to be shown was that land containing limestone bearing such a low per centum of silica as gave it value for fluxing, had a market value quite as distinct as has land only valuable for agricultural purposes. The offer distinctly states its purpose to show the value in the public market of that kind of land. The witness had testified that stone carrying so low a per centum of silica as made it suitable for fluxing was a rare commodity and that prop-

erties yielding such product were rare in the general market. Of course, as is always the case, even with agricultural land, no two properties would have in the market exactly the same value; there could be no uniformity of value, so many undetermined factors entering into each and every case, such as the extent, location, fertility, marketability of products, general convenience, neighborhood, and many other things. The same seems to be true with regard to the market value of properties containing limestone suitable for fluxing. The whole purpose of the offer, as we read it, was to show that this tract of fourteen acres was of but little, if any, value for agricultural purposes, yet, constituting a part of a cultivated farm, had a value for other purposes that would induce purchasers to purchase, and this is the true test as to the admissibility of evidence: R. R. v. Braham, 79 Pa. 447.

The error of the learned judge in rejecting the offer for the reasons stated by him would be unimportant had the objection made by counsel prevailed, namely, that the offer introduced a measure of damages not the true measure in such case; for, if inadmissible for the reasons stated by counsel, it would have been harmless error that the court committed in rejecting the offer assigned for insufficient reasons. But the objection urged by counsel was equally untenable. As well say that an offer to show that a certain portion of the tract was underlaid with coal, marketable at great profit,— a circumstance which would very obviously be an inducement to purchasers,—would call for rejection because it introduced a measure of damages not the true measure. In all such cases the correct measure is thus stated in the case of Shenango & A. R. R. Co. v. Braham, supra, and we have never recognized any other. It is there said: "It was the market value of the land before and after the alleged injury which the jury were to consider, not the value of the farm as a farm. The word 'farm' is employed merely to designate the use to which the land

has been applied by the owner. The particular use, as was remarked by Chief Justice TILGHMAN [the reference is to the opinion in the case of Schuylkill Nav. Co. v. Thoburn, 7 S. & R. 411], is a mere collateral consideration. Land may be applied to various purposes and possesses value for distinct objects; it may be devoted to agriculture; improved by the erection of buildings or the opening of mines; or it may be adorned for the sole object of contributing to the pleasure and gratifying the taste of the owner. The construction of a railroad through it might utterly destroy its value for some purposes, and yet greatly increase it for others. It is its general market value for any purpose that will induce persons to purchase, which is the true test."

In McTerren v. Mont Alto R. R., 2 W. N. C. 40, the general rule that the measure of damages is the difference between the value of the property before the location of the railroad and after its completion, is thus explained: "We have repeatedly said of late (R. R. v. Gearhart, 1 W. N. 237; R. R. v. Modell, Id. 287; R. R. v. McKelvey, Id. 338; R. R. v. Ranck, Id. 608), that this does not exclude the evidence of all the elements which properly enter into the final estimate of value, and which constitute the advantages or disadvantages attending the location and construction of the railroad. If a railroad sever parts that are only convenient and profitable when united, or its location begets inconveniences, requiring greater risk and labor in the enjoyment of the property, surely these disadvantages may be shown. So, if the land possess elements of advantage which the railroad will develop and make profitable, surely they may be shown. Has it coal upon it, or iron ore, or timber, which can thus be developed, these things may be shown. In the final estimate of the jury, these things all aid in enabling them to fix a true value upon the land. The evidence of these elements is legitimate, and its application must be made through proper instructions from the court."

The appellants' claim for damages for injuries sustained, aside from the loss of so much of their land as was appropriated, was confined to a deprivation—in consequence of the location of the railroad at the base of the high cliff, which the exposure and boundary to the south of the fourteen acres cut off from the main body of the land—of the free and profitable use of the fourteen-acre tract for the mining and shipping of the limestone thereon or there to be found. They had offered and introduced much testimony, the purpose of which was to show to what extent the railroad, located as it was with reference to this cliff, would interfere with and prevent the profitable quarrying and shipping of the limestone, the mining and removal of which by the owners of the land, without the obstruction of the railroad interfering, could be made with comparative ease and profit. In the early part of the trial counsel for the defendants, in replying to an objection made to a question asked of one of plaintiff's witnesses upon cross-examination, used this language in addressing the court: "It will be shown that this farm is divided into two parts by Back creek. All that is used as a farm, if used, lies east of the creek; that on the east side the land is slate, and immediately across the creek the land is limestone. We will not contend that the farm lying on the east side is hurt one penny by the railroad......The truth is, the land lying west of the creek has never been used for farming purposes; it is no part of the farm proper, and the damages claimed do not result to the farm as a farm but to the quarry part of it lying west of Back creek." The witness then upon the stand under examination had previously testified without objection, as had several others, that the railroad constructed upon the route proposed—at the base of the cliff which was the dividing line between the fourteen-acre tract and the remainder of the one hundred and fifty acres of the farm—would greatly interfere with the profitable quarrying of the limestone on the former by the owner or owners of the farm; that

such quarrying would to a greater or less extent be rendered impracticable and, to a corresponding extent, unprofitable. The main deduction from this, if believed by the jury, would be the serious impairment of the market value of the property of the defendants when offered in the general market as a whole.

What then were the questions of fact to be submitted to the jury for the determination of the question at issue? First of all was the question whether or not the fourteen acres, before cut off by the railroad from the main tract, had a value of its own for some purpose distinct from those things which gave value to the remainder of the land and which would induce purchasers to bid, not on the fourteen-acre tract as distinct and apart from the remainder of the farm, but to bid on the whole tract because it included the fourteen acres. Second, if it be found that it had such value peculiar to itself, what was the market value of the whole farm, including the fourteen acres? Third, what would be the market value of the entire property as affected by the railroad after its completion, would it be more or less, or would it remain the same?—if more, that would mean that the defendants had sustained no damage and they could recover nothing; if less, the difference would be the measure of their damages. In determining these questions, particularly the third, the jury would necessarily have to pass upon these questions in the light of the facts produced under the offer of evidence we are now considering, giving to that evidence such weight as they might think it entitled to. The testimony would be both pertinent and proper. It follows that it was error to reject it, and the assignment of error is sustained.

In what we have said we have indicated what we regard as the true and only measure of damages in this case. Such other assignments as complain of a misconception or misapplication of the true rule, if any, would call for special consideration, were it not that we are of opinion that what has been said as to the general sub-

ject will be sufficient to avoid repetition of error on the second trial of the case.

For the reasons stated the judgment is reversed and a venire facias de novo is awarded.